UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JACKSON,<br><br>        Plaintiff<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 2:14-cv-9935 (GJS)<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

For the following reasons, the Court affirms the decision of the Commissioner finding Jackson to no longer be disabled as of April 1, 2012.

## PROCEDURAL HISTORY

This case involves cessation of Plaintiff Curtis Jackson's disability benefits. In a decision dated August 27, 2001, Jackson was found disabled as of May 3, 2001. On April 4, 2012, the Social Security Administration found that Jackson was no longer disabled as of April 1, 2012. That decision was upheld on reconsideration by a Disability Hearing Officer. Jackson requested a hearing before an Administrative Law Judge ("ALJ"). (Administrative Record ("AR") 9.) The ALJ conducted a

hearing on February 1, 2013 (AR 27-47), and thereafter issued an unfavorable decision (AR 9-16). That decision is at issue here.

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a seven-step process to determine if a person once determined to be disabled continues to be disabled. 20 C.F.R. 404.1594. At step one, it is determined whether plaintiff has an impairment or combination of impairments which meets or medically equals the criteria of any listed impairment. 20 C.F.R. §§ 404.1520(d), 404.1524 and 404.1526. If claimant does, the disability continues. 20 C.F.R. 404.1594(f)(2).

At step two it must be determined whether medical improvement has occurred. 20 C.F.R. 404.1594(f)(3). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvements in symptoms, signs and/or laboratory findings. 20 C.F.R. 404.1594(b)(1). If medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step.

At step three, it must be determined whether medical improvement is related to the ability to work. 20 C.F.R. 404.1594(f)(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. 20 C.F.R. 404.1594(b)(3). If it does, the analysis proceeds to the sixth step.

At step four, it must be determined if any exception to medical improvement applies. 20 C.F.R. 404. 1594(f)(5). There are two groups of exceptions: 20 C.F.R. 404.1594(d) and (e). If one of the first group of exceptions applies, the analysis proceeds to the next step. If one of the second group of exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

At step five, it must be determined whether all the claimant's current impairments in combination are severe. 20 C.F.R. 404.1594(f)(6). If all current impairments in combination do not significantly limit the ability to do basic work

activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

At step six, the claimant's residual functional capacity must be assessed based on the current impairments and it must be determined if past relevant work can be performed. 20 C.F.R. 404.1594(f)(7). If a claimant is able to perform past relevant work, disability has ended. If not, the analysis proceeds to the last step.

At step seven, it must be determined whether other work exists that the claimant can perform, given the residual functional capacity, and considering age, education and past work experience. 20 C.F.R. 404.1594(f)(8). If the claimant can perform other work, he is no longer disabled. In order to support a finding that an individual is not disabled at this step, the Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education and work experience. *Kail v. Heckler,* 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999). Even if a claimant shows the ALJ committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler,* 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger,* 514 F.2d 1112,

1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir. 1980)).

**THE ALJ'S FINDINGS AND ISSUES PRESENTED**

In this case, only the determination of the appropriate RFC and ultimate finding of no disability is at issue. The Court nevertheless summarizes the ALJ's opinion for context.

The ALJ determined that Jackson was originally found disabled in August 27, 2001, based on the medically determinable impairments of depression and substance abuse. (AR 10.) Then, as of April 1, 2012, Jackson was found to have the following medically determinable impairments: affective disorder, N.O.S. (i.e., unspecified), substance abuse, non-insulin dependent diabetes mellitus, and skin disorder ("the present impairments"). The ALJ found that the present impairments, while severe, did not meet a listing, singly or in combination. (*Id.*) The ALJ next compared the original impairments to the present impairments, found that there had been a decrease in the severity of the impairments that presented at the original determination of disability, that this medical improvement related to the ability to work, and that no exceptions to medical improvement applied. (*Id.*) The ALJ further found that Jackson's remaining impairments in combination were severe, and thus went on (step six) to determine his Residual Functional Capacity ("RFC") to be as follows:

4

> Beginning on April 1, 2012, based on the current impairments, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: limitation to simple routine tasks, with occasional public and coworker contact.

(*Id.*)

Finally, with this RFC, and considering the testimony of a vocational expert, the ALJ found that Jackson could perform meaningful work, and was therefore no longer disabled as of April 1, 2012. (AR 14-15.)

The ALJ based the above findings and his RFC on his assessment of the medical evidence, consisting of:

(1) Westside Medical Clinic records covering February 2010 through October 2012 that indicated sporadic treatment for back pain and diabetes, with progress notes showing no abnormal findings (AR 12, citing AR 225-83, 306-07, 330-44, 358-72);

(2) the opinion of consultative psychiatrist Elmo Lee, who diagnosed Jackson with undifferentiated schizophrenia (AR 12, citing AR 284-88);

(3) the opinion of State Agency medical consultant R. Brooks, M.D., who reported non-severe affective disorder (AR 12, citing AR 313-23);

(4) the opinion of State Agency consultative psychiatrist G. Rivera-Miya, M.D., who reported non-severe affective disorder with mild limitation in maintaining social functions, and no other functional limitations (AR 12, citing AR 295-305); and

(5) a report from Susan Lawton, M.D., a physician from a treating clinic, and related notes indicating positive cocaine use, continuing complaints of depression and anxiety, a complaint of chronic pain, and that Jackson said he hurt his back at "car dealership" (CT scan showed no evidence of fracture) (AR 12, citing AR 390-94.).

1  The ALJ also considered Jackson's own testimony and that of a friend, Connie
2  Garcia, both opining that Jackon was disabled, and the fact that Jackson was under
3  investigation. A Cooperative Disability Investigation in October 2011 involved
4  interviews of both Jackson and a neighbor. (AR 350-57.) Jackson himself reported
5  that he could drive and go out on his own, cook, clean, do laundry, grocery shop,
6  make cash purchases, pay bills, and balance a checking account. He also stated he
7  was not under the care of a psychologist or psychiatrist or taking any medications.
8  He claimed to be substance abuse free for a decade. (AR 12, 350-57.) He reported
9  he was learning how to play chess, played video games, and enjoyed watching his
10 collection of old movies. (*Id.*)

Jackson's neighbor saw him on a daily basis, and characterized him as very social and outgoing with many friends. He said that Jackson had a business detailing cars, and that he swept the premises and maintained a clean property. He further described Jackson as alert and coherent, and noted that he could follow a conversation, maintain eye contact, sit, bend, kneel, and stand without apparent difficulty when detailing cars. The ALJ noted that Jackson had a business card that reflects this self-employment, indicating several services Jackson could perform. (AR 14, 357 (copy of business card).)[1]

In light of this evidence, the ALJ found, *inter alia*, that Jackson was less than credible. Jackson does not dispute this finding. In light of the evidence of malingering, he could not.

---

[1] When questioned about the business card during the hearing, Jackson alleged that his ex-wife made a fake business card for reasons not well explained by Jackson. (AR 36-37.) As noted previously, Jackson has been found less than credible, and that finding has not been challenged.

6

## DISCUSSION

An ALJ may reject a treating or examining source opinion contradicted by another doctor's opinion for specific and legitimate reasons that are based on substantial evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). Although Jackson's arguments are unclear, and, the Court posits, presented in the wrong analytical order, it appears that he contends that Dr. Lee's opinion is uncontradicted because it is not specifically mentioned in the opinions of the two State Agency doctors who opined that Jackson's mental limitations were minimal. (Joint Stip. at 23 ("An ALJ cannot properly say that non-examining medical experts disagreed with the opinions of a physician who they did not even deign to mention."). Or, looked at another way, Jackson is saying that the State Agency doctors' opinions are not supported by substantial evidence because they did not consider Dr. Lee's opinion, and therefore cannot be credited over his. (Joint Stip. at 23 ("Their opinions are not supported by substantial evidence if they did not even consider Dr. Lee's reported clinical findings, if they even saw it.")).

Next, assuming there is a contradiction, Jackson argues that the ALJ's "sole reason" for rejecting Dr. Lee's finding of disability based on schizophrenia was that Dr. Lee's findings were based entirely on Jackson's statements, and that this reason was not supported by substantial evidence. Because the parties address the latter argument first, the Court will do so as well.

**I.   The ALJ's Decision to Discount Dr. Lee's Opinion is Supported by Substantial Evidence.**

It is uncontroverted that Dr. Lee based his evaluation solely on statements Jackson made during a single interview— statements which were completely within Jackson's control. After all, Dr. Lee reported that there were "no records for review." (AR 284.) He relied on Claimant's statement that he had "mental

7

problems," (AR 284), and noted that Jackson—who the ALJ had determined was not a credible witness—was not a "reliable historian," and was "rather vague" about his treatment history. (AR 284-85.) Jackson reported "hearing voices for 'a long, long time'" (AR 284), but there is no other evidence in the record of this symptom. Dr. Lee also relied on Jackson's statement that he did not participate in any activities outside the home—a statement that the ALJ correctly found "clearly not credible" based on the results of the investigative report, other witness testimony, and Jackson's own statements. (AR 14.) In short, Jackson self-reported that he was schizophrenic, without using that specific medical term, and that is precisely what Dr. Lee then opined.[2]

As the Commissioner correctly posits, an ALJ may properly reject a doctor's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ needed only one specific and legitimate reason to reject the opinion of an examining physician, and he gave one here—that Dr. Lee's opinion was based on Jackson's unreliable self-reporting. That reason is supported by substantial evidence, including the unchallenged finding that Jackson lacked credibility, which, in turn, was based on the statements of Jackson's neighbor about his activities (including running a car detailing business in his driveway), his many friends, his positive affect, and the investigator's interview with Jackson in which he

---

[2] Jackson argues that Dr. Lee's opinion was also based on "testing." However, the "testing" that Dr. Lee performed was really only a few additional questions in his limited interview of Claimant (*e.g.*, assessing his "fund of knowledge" and memory (AR 286).) This hardly amounts to rigorous mental examination. Moreover, the outcome of these alleged tests was entirely within Jackson's control. Given Jackson's questionable credibility, an opinion based on such an interview is exceedingly suspect. *Hughes v. Astrue*, 357 Fed App'x 864 (9th Cir. 2009) (unpublished) (ALJ properly rejected opinion based on claimant's self-reports after finding claimant not entirely credible where credibility finding was not challenged).

denied mental health problems and discussed his hobbies. All of these facts support the conclusion that the entire foundation on which Dr. Lee based his opinion—his interview with Jackson—should be discounted. The ALJ thus did not err when he gave little weight to Dr. Lee's opinion.

**II. The ALJ's Decision to Credit the Opinions of Two State Agency Physicians was Proper and Based on Substantial Evidence.**

Jackson's argument appears to be that the opinions of the two State Agency examining physicians must be entirely discounted—*i.e.,* that they are not supported by substantial evidence and cannot be said to contradict the opinion of Dr. Lee—solely because they did not refer to Dr. Lee's opinion. Jackson cites no authority for the proposition that a non-examining physician must reference every medical opinion or record in making his or her conclusion. In fact, it is illogical to assume such a rule, because in many cases, the opinion of one medical source may not be available to another. Yet medical source opinions that do not cross-reference each other are often found to be both worthy of consideration and contrary to other opinions.

To support his argument, Jackson cites a footnote in a case primarily about EAJA fees. (Joint Stip. at 23, citing *Shafer v. Astrue*, 518 F.3 1067, 1069 n. 3 (9th Cir. 2008)). In the *Shafer* footnote, the Court pointed out that it was factually incorrect ***in that case*** that a treating physician's opinion was controverted by that of a non-examining medical source opinion that did not discuss the treating physician's opinion. *Id*. *Shafer* does not purport to hold that a non-examining physician (or any other medical source) must refer to and rebut all other medical opinions. Here, the ALJ properly credited the opinions of the State Agency doctors, which he found fully credible, supported by the medical evidence, and consistent with their areas of specialization. (AR 14.) There is no legal error here. *See Morgan v. Chater*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that the ALJ permissibly favored non-examining medical opinion over treating and examining sources' opinions, where

the ALJ correctly identified inconsistencies within, and between, their reports, and specific evidence supported by the ALJ's conclusions and the advisor's testimony); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) ("We have held that the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (same).

Finally, because Dr. Lee's opinion was properly deemed unreliable for the reasons stated above, any error by the State Agency physicians in not considering it would be harmless, as they would undoubtedly have rejected its conclusions.

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is AFFIRMED and this action is DISMISSED WITH PREJUDICE; and

(2) Judgment be entered in favor of the Commissioner.

**IT IS HEREBY ORDERED.**

DATED: March 31, 2016  _____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE